The next case this morning is number 519-0158. Fournie versus Fournie. Arguing for the appellants Joseph and James Fournie is Craig Unrath. Arguing for the appellee Donald Sampson as receiver for Belleville Contracting is Laura Schrick. The appellee Robert Fournie is represented by David Durie. He's here as a non-video participant but he will not be arguing. Each side will have up to 20 minutes for their argument. The appellee will also have five minutes for rebuttal. You will see the digital timekeeping device on my screen. When time has expired I will bang the gavel. Finally please remember that no photographs and only the clerk of the court is permitted to record these proceedings today. Good morning counsel. Good morning. Mr. Unrath you may proceed when ready. Thank you your honor. This is my first video conference. I wish I could say I enjoy doing oral argument this way but I'm afraid that would be not true. Just to cover the formalities my name is Craig Unrath. I represent the defendants Joseph and James Fournie. This case originates from a complaint filed by Robert Fournie Sr. I asked the court to look at the caption of that complaint. It states that the complaint is being filed on behalf of Robert Fournie individually and as a shareholder of Belleville Concrete. That is the only complaint filed in this case. Accordingly it stands to reason that any judgment entered in this case would inure to Robert Fournie but we know that that can't possibly be true. The court appointed Donald Sampson as receiver to marshal the assets of the corporation for not for Robert Fournie's benefit but for the benefit of Belleville Concrete and all of its shareholders. As we all know the receiver represents the corporation. Any judgment in favor of the corporation must as a matter of law derive from a complaint filed on behalf of the corporation but none was filed. There is not a single pleading filed anywhere in this case on behalf of the corporation. Look at the cover of the appellee's brief. Do you see anything there suggesting that Belleville Concrete is a party plaintiff? How is it that judgment can be entered in favor of a corporation that was never made a party to the litigation? Well the excuse me I'm looking at the caption as you suggest and Belleville Concrete Contracting Company is named a defendant. That's correct. Have you ever heard of a judgment being entered in favor a money judgment being awarded in favor of a defendant? It would seem to me that they would have to be named as a party plaintiff and they're not. Well you know in my experience typically what happens is in a shareholder action like this and this was an odd complaint I have to admit. The corporation is named as a nominal defendant but my question to getting right to the heart of the matter is is there any case that you know of where a third party can file a pleading that would generate summary judgment on behalf of any party? No I'm not. Do we have any rules in it? This is not federal court so and as you know Mr. Unrath I did a lot of this work. Is there any rule in Illinois that allows for the appointment even of a special master or a special mediator as Mr. Sansom was appointed except perhaps maybe under the Business Corporation Act? I'm not aware of any such rule and I think that the appointment of the receiver was appropriate in this case. And why was the appointment of a receiver appropriate? A receiver is where, correct me if I'm wrong, but you're marshaling assets. This was an accounting action wasn't it? It was and that's what was pled in Robert Forney's complaint. It began as an accounting claim and somehow turned into a claim for dissolution. I've got lots of questions I apologize. Did the complaint ever get amended to make it for dissolution? No it did not. The statutes in my, again I'm going back to some but that was a long time ago, allow for judicial dissolution. Did that occur here? I'm not aware of any pleading or court orders stating that there would be that this was somehow transformed into a dissolution action, judicial dissolution. And to be quite frank I'm not familiar with the term. Okay well I know that that does exist but I didn't see it in the record. The other questions I have, there was also a request for an injunction in this case when it was originally pled. Was that ever dismissed? I have the prayer for relief in the complaint right here. Well I think count three or four was for an injunction. Yes and that that dealt with I believe some property matters. There were a number of different parcels of land that were in dispute and as I understand it those were settled. So what's a little bit confusing to me is we had two kinds of lawsuits going on within the one and that is we had the accounting claim because the shareholder could not get the information. And then we had several counts I think related to the property, who's going to get the property and that kind of thing. That's correct. The court order at issue talks about transferring the summary judgment as to the accounting count. Only to count one, to the accounting. Yes. So we don't have to worry about those other counts even though they're in the order. That's my understanding yes. Okay go ahead. I'm sorry. As I was saying that this case I found amazing and really unusual in the fact that the party that has been awarded a money judgment, Belleville Concrete, was never made a party to the litigation. And it occurred to me that try to imagine an attorney representing a client in a traffic accident and trying to recover damages, files a complaint but names himself as the party plaintiff. Doesn't even mention his client as a party plaintiff. Is there any court that would enter a judgment in a complaint like that? And that's very similar to what we have here. Now the receiver has argued that we have suffered no prejudice from the denomination of the receiver's pleading as a motion for turnover as opposed to a complaint. That's not the point. The receiver is fully, pardon me, is fully authorized to conduct an investigation into the corporation's assets and liabilities accordingly. Defendants cooperated with that investigation and engaged in discovery. But obtaining a judgment based on that investigation is an entirely different matter. Again, where is the statute on the receiver's powers? That is under Delaware law as I understand it. And as I understand it, the Delaware statute provides that the receiver's powers are limited by the trial court's order appointing the receiver. The reason I ask is, and maybe I misunderstood, but the section quoted was an Illinois law section 805 ILCS 5 slash 12.56 which talks about shareholder remedies. And then we keep going back to Delaware law. I mean, was there a form selection clause in the corporation itself? I mean, were we mixing statutes here? That's what I was trying to figure out. I can understand your confusion. I'm a bit confused by this myself. This began as an accounting under Illinois statute, and yet we're dealing with a Delaware corporation. So, ultimately, any issues involving the articles of incorporation and the powers of the receiver would be based on Delaware law. That's my understanding of it. You would concede that? Yes. So that when we talk about the powers of the receiver, we are going to be selecting Delaware law, not Illinois law? That's correct. Okay. And you believe that the court appointed Donald Sampson as the receiver under Delaware law? That's correct. It would be governed by Delaware law, yes. Procedurally, though, we're under Illinois law because we're an Illinois court. And under Illinois law, is there a definite requirement that something be named, a complaint be filed before a judgment to be entered? I'm not sure. What I'm trying to figure out is under Delaware law, the motion that was filed, is that adequate and sufficient to have a judgment entered on that motion as opposed to in Illinois? The substantive law would be governed under Delaware law, procedurally under Illinois law. And under Illinois law, the code of civil procedure plainly states that the initial pleading must be brought in the form of a complaint. That's how an action is initiated. And this is one thing that came up in the trial court's order on granting summary judgment. He said, well, look, you litigated this for years. They filed their motion for turnover, and you engaged in discovery. But now, years later, years later, now you're saying that they used the improper procedure. He basically said that you've waived this argument. Number one, I would ask, is this even possible to be waived? Can you waive the fact that the corporation has never made a proper party plaintiff? But secondly, and I think this is even more important, we engaged in the investigation. We engaged in discovery. But the moment a pleading was filed, seeking a judgment, when the receiver filed his motion for summary judgment, within roughly 30 days, we filed a response objecting to that procedure. We pointed out that he must have a complaint on file. The receiver stands in the shoes of the corporation. We understand that. But the receiver is not the corporation. The receiver is authorized to perform whatever necessary acts are required to represent the corporation. That doesn't mean that you can avoid the basic principles of a legal procedure. And again, the moment they sought judgment, at that point, we objected. At that point, the receiver could have and should have filed a complaint on behalf of the corporation, but did not. Now, the receiver argues that it's the substance of the filing, not the name of the pleading that's important. And we see this all the time. A 2615 motion should have been a 2619 motion or should have been a motion for summary judgment. This is not one of those situations here. Here, we have no pleading identifying of the proper party plaintiff to the claim. This is not just a formality. We're not quibbling about the name of the pleading. The point we're trying to make is that the corporation was never made a party to the case. Now, as to the merits of the case, we submit that there are a number of genuine issues of material fact, barring summary judgment. You'll note that the trial court's analysis opens with a conclusion. The very first sentences, there is no genuine dispute that payments made to the defendants were void, as a matter of law. The court then supported that conclusion with yet another conclusion, stating it is not reasonable to conclude that two employees previously earning $68,000 presented a significant enough value to the corporation to justify the bonuses were reasonable is a classic issue of material fact. It cannot be decided as a matter of law. Now, the receiver contends that we relied solely on uncorroborated, self-serving facts to support our claim that the payments were made in good faith. That is not true. The undisputed evidence shows that as a direct result of the defendant's expertise and labor on the Dillard project, they transformed a contract for $600,000 into a multi-million dollar contract. It is undisputed that Belleville Concrete earned between five and six million dollars on that project alone, of which Belleville Concrete earned a 30% net profit. In other words, what we're on James and Joseph Forney's work. Now, the receiver had full access to the corporation's books. If those numbers were incorrect, if they were inflated in any way, the receiver was in the best position to point that out, but he never did. I'm still confused. I mean, about this receiver, and I understand that we're talking about Delaware law, but I guess that's my problem, and I think Justice Barberos asked about it as well. This case was filed as an accounting case, and even under Delaware law, in order to appoint a receiver, there has to be some showing that the corporation is insolvent, and what you're talking about is a corporation that's very healthy. The problem was, according to the complaint, that he couldn't get any access to the books and records of the corporation. A very simple accounting claim, and I'm still having trouble wondering why we're in a procedural Delaware appointment. Why are we mixing law here? Because substantive law is, okay, does Delaware law apply for the substantive issues? But this was a simple accounting case, so why are we appointing a receiver under Delaware law? I can say only that this was done because the receiver reported that the corporation was no longer a viable enterprise, that the parties would never be able to resolve their differences, and a receiver was appointed to dissolve the corporation. Now, that is something that I actually pointed out in my reply brief, is that in order to dissolve a corporation under Delaware law, you need a board meeting and a vote. This is not something that can be done by judicial fiat. Dissolution, I would agree, is a substantive matter, and I'm not sure of any, I can't even imagine that it can be court ordered for, unless there's deadlock. And was there finding of a deadlock here? I believe there was. I believe that the directors and shareholders of the corporation were unable to resolve their differences and had reached a deadlock, yes. Well, how can there be a deadlock when there's multiple shares going on without a vote? I mean, people can say we can't get along, but deadlock is 50-50. And that, under what I read as the number of shares being owned by the respective parties, it doesn't seem to me that you can decide deadlock without a vote. I agree, Your Honor. I think that this entire case suffers from a number of, pardon me, serious flaws. And I have to admit, I came into this as I found it. I do want to point out, though, as we did in our reply brief, that the receiver relies heavily on a Delaware statute, Section 291, which states that a receiver is empowered to prosecute and defend in the name of the corporation, all claims or suits or any other acts. But that's when I'm looking at that statute right now, and it says when it's insolvent. Right. And we did not have an insolvent corporation here, not by any means. Well, thank you. Go ahead, Justice. If I may, when the receiver reported to the court that the corporation was insolvent, or not insolvent, but they were at a bypass, they were not going to be as a corporation, was this before or after, was it James Forney's wife that formed the new corporation that essentially took all the business that Belleville Concrete Company had and started, and they fired all the employees of the corporation? Did that occur after the report that the receiver made to the court? I don't have the chronology on that. And I don't know that the record even contains that chronology. All I can say is that there was a situation where James Forney's wife did open, begin another business. And that some business, I would not go so far as to say the business was taken away from Belleville Concrete. Well, I think the record indicated that all of the business of Belleville Concrete Company had dried up. Yes, absolutely. The new corporation had acquired some, if not most of it. I'm not aware of that. All I know is that they were involved in exactly the same type of work. They performed the same work, whether they took clients away or took some or all of the business away. I have no information on that. And I believe the record on appeal is silent on that issue. Thank you. I have just one more question and follow up to Justice Barberas. With regard to the assets of the corporation being moved, was there a breach of fiduciary duty claim? I think there was in the complaint in count one. No, Your Honor. This was just a simple accounting. No, it wasn't a simple accounting. Matter of fact, I have it right here, the charging allegations. He asked for an accounting to ascertain amounts improperly paid to defendants for salaries in excess of the amount lawfully due them. He asked to appoint a custodian to manage the business and to award damages. So, is there a claim for breach of fiduciary duty? No. Have the elements of a claim for fiduciary duty ever been alleged anywhere? The answer is no. Well, let me go ahead and hear from the other side. And then, does either justice have any follow-up questions? Justice Barberas? Okay. All right. Thank you, Mr. Unrath. Ms. Schrick? Thank you, Justice. Good morning, panel. My name is Laura Schrick, and I represent Don Sampson, the appellee, and his capacity as receiver for Belleville Concrete. Obviously, I can hear that the panel has a number of questions about the procedural posture of this case, his role in the case, his authority. I'm going to try to address those. Certainly, feel free to interrupt me with specific questions that would be helpful. With respect to the overall context of this case, I think, excuse me, Ms. Schrick, we've lost your audio. Can you speak up? It appears when you're not speaking directly at the microphone, we lose you quickly. Let me try this. Is that better? Yes. Okay. I'll try to make sure I'm facing the computer. The underlying claim brought by Bob Forney in this case did name Belleville Concrete as a defendant, likely a nominal defendant. The primary count in that case as it relates to the issues on appeal was an action under Section 1256 of the Illinois Business Corporation Act, essentially allegations of minority shareholder oppression. Counsel summarized some of the relief specifically sought by Mr. Forney in that count, which included appointment of a custodian, judicial dissolution, a determination of amounts improperly paid to the defendants as salaries, or other amounts unlawfully paid to them. It raised a number of the issues that are specific to the motions for turnover and the summary judgment rulings directly at issue on this appeal. The parties in this case are family. They had a contiguous relationship as shareholders. Initially, Mr. Sampson was appointed custodian pursuant to that pleading, presumably. He was then shifted to a different role as financial auditor and examiner. And then finally, with consent of the parties, appointed receiver. Now, I'm going to ask you the same question because, you know, I'm looking at the section you just cited under the Business Corporation Act, and it allows for the appointment of a custodian. It allows for the court to dissolve the corporation, judicial dissolution. But how did we get to Delaware law and the appointment of a receiver? Correct. 1256 also allows the court to make sure we're clear to take other remedies that those are the enumerated remedies. The corporation is a Delaware corporation, which is how Delaware law comes into play. So Belleville Concrete Contracting Company is a Delaware corporation. I believe it was organized in like 1957. It's been a long, ongoing concern. Because it is a Delaware corporation, Delaware law would apply to substantive business matters, substantive issues in this case. So you're saying that Section C, the remedies set forth in subsection B shall not be exclusive of other legal and equitable remedies, which the court may impose? Correct. That was the section I was referring to justice. Yes. Okay. These are remedies. Can you say that then appointment of a custodian moving to Delaware law and what the Delaware law can do? Somehow, this section cannot incorporate that. I'm not necessarily saying that justice. We've briefed powers of a receiver are many and there are multiple sources of authority for a receiver. Both Illinois and Delaware recognize equitable receiverships, which is what I believe the court intended to order and what Mr. Sampson believed was performing functions of in this particular matter. I think you don't believe that the court was mixing Delaware procedure with Illinois procedure. I do not. I do not think at this point anyone had briefed anything under Delaware law. That's what I was confused about. Actually, thank you for that clarification. So the equitable receiver is what you're talking about. But do you a motion for which there was a judgment? The closest case, and I can't recall if there was a judgment or there was a order granting a motion for turnover. But the case that comes to mind is Anderson versus Dundee 53. It's a case that's cited in our brief. And that was a case where the court ordered turnover of approximately $3 million to a receiver pursuant to a motion for turnover. Counsel noted, and he's correct, that the opposing party in that matter, not directly challenge the procedural device of a motion for turnover. But that is a situation where recovery was obtained by a receiver. Okay. So a little bit of background there. I think we do agree that court orders are significant in terms of determining the powers and scope of a receiver. In this case, it was clear the receiver and officer of the court stands in the shoes of the corporation. His job is to do equity to benefit the corporation to recover and marshal its assets. The court in this matter entered a series of orders, all consistent with directing the receiver to pursue turnover of these lease and bonus payments. Initially, there was the order directing the receiver to marshal the assets of the court and causes of action such as causes of action for breach of fiduciary duty fall within the scope of a asset. From there, the court entered additional orders, authorized the receiver to retain counsel specific for the purpose of pursuing a motion for turnover of these assets. Then entered orders setting conferences on this issue and ultimately directed the parties including the receiver to file a motion for summary judgment on this issue. The receiver complied with each of the orders of the court and procedurally that's what brings us to the summary judgment motions that are directly at issue in this appeal. Is there a time frame in which the receiver can go back and uncover wrongdoing or malfeasance or possible claims that they can pursue in relation to when they are appointed? Does it have to be specified by the court how far it can go back or what's the general rule? No, I think that the receiver and the court have discretion to determine as long as the claim is still an actionable claim, it is a claim that potentially the receiver could recover. So, no particular time frame back? Ordinary statutes of limitations. Yeah, I don't believe there's any limit specific to receiverships, particularly an equitable receivership like this one. Thank you. Shrek, let's suppose hypothetically that this accounting was such that Mr. Forney, Plaintiff Forney got all their documents and saw that there had been a breach of fiduciary duty. Could he then have amended his complaint to dissolve the corporation prior to the start of this second corporation, which essentially dried up the business? Or in fact, could he then have claimed that the new business was started for the sole purpose of defrauding or taking money from the first corporation? Hypothetically. Right. I don't want to speak for Plaintiff Forney, but I think potentially those are options. In this particular matter, I think timing wise, the parties may not have been aware, certain parties such as Plaintiff Forney may not have been aware of the competing business established by Ms. Forney. There are a number of related cases, as you may have seen in this file, at periods of time they were consolidated with this case. Those include additional actions by Let me make sure I understand. You mentioned the case of Anderson v. Anderson. I believe it's called Anderson-Dundee 53. It's a 2005 first district decision. And you said Anderson-Dundee. I'm looking at your brief. Maybe it's the wrong brief. It's Mr. Dury's brief. Do you have the citation on it? 293. Do you have the citation on that case? No. And just while she's looking, I would note that we received appendixes. Forty-five pages plus more were just the record on appeal. Personally, I can say to you all that I think that's just a waste of the use of an appendix. We have the record on them. I mean, we have an index that the court should provide to us. So from my point of view, when I have to print out these briefs, I don't really want to see 50 pages of here's what the record. Thank you, Justice. Yeah, we'll keep that in mind. I apologize. I can't. Anderson-Dundee 53 LLC. And it's versus Terzakis. Terzakis. I'm just looking for the site. 363 ILL app third 154. Thank you. You're welcome. But as counsel noted, you know, in this case, I'm sorry, I stopped you for one second. Something you just mentioned in answering Justice case question. Do you have a different understanding than Mr. Unruh with regard to the timing of the startup of the new corporation by James Horny's wife and the appointment of the receiver? I believe that the new corporation was up and running at the time the receiver was appointed. However, I'm not certain that that's something that was known to all of the parties or the court. What was known to the court I guess, at the time the receiver was appointed, he had made a financial report to the court as opposing counsel noted, essentially explaining that the business had dried up, as well as the fact that these parties were deadlocked, and we're not going to be able to proceed working together as a corporation dissolution looked likely. Okay, thank you. You're welcome. To briefly address the issues, right? There is good law in Illinois, as counsel mentioned, not just limited to 615 and 619 motions, but that the court should look to the substance of a pleading in determining its character. There are cases that have affirmed the use of a pleading denominated motion as a complaint. And we cite in re marriage of fast for that proposition in our brief. I don't believe there was ever a time during the pendency of this case that James and Joseph Forney raised any concerns that the elements of breach of fiduciary duty were not actually pled. If you look at the full context of the oral argument, when the motion for summary judgment was argued to Judge Lachine, he specifically asks James and Joseph Forney's counsel, if they feel like there was an issue under 619 is what he mentioned in particular, that they were denied an opportunity to present and counsel answers. No, he answers simply that he believes that this process is procedurally improper. But under Illinois law, we look to the substance of the pleading and the substance of this pleading, particularly the amended motion for turnover, alleged a claim for breach of fiduciary duty provided the parties with notice. And at no time have James and Joseph Forney claimed that they lacked sufficient notice of exactly what was at issue here. Specific payments and dates were identified. Their duties as officers and directors were identified. If there's nothing in the orders, is there, maybe I missed it, that says the court is using the Illinois law of judicial dissolution, substantive law of judicial dissolution. I mean, it seems like we're mixing apples and oranges here. We go from a simple accounting to now the court using its equitable remedies, not only to appoint a receiver, and I use that word very loosely, but now we're entering into a substantive disposition of the corporation, which is now a Delaware corporation. So we have a conflict of laws issue that's not discussed by anyone in this case. I'm not sure that I follow on the conflict of laws issue. The conflict of laws issue is we have a Delaware corporation that's incorporated under Delaware law being dissolved, actually summary judgment, under Illinois law using substantive Illinois law. So at least there arises the potential issue for a conflict of laws discussion. And we do have an objection by the clients for Mr. Unrath, the appellants, saying that on the record, we believe this procedure is improper. So what do we do with that? Yeah, the procedure they objected to was the denomination of the complaint as a motion for turnover. There was never any objection to the choice of law issues. Well, okay. And the case you cited, which was Anderson Dundee 53 LLC, is really a case where the court says they lacked jurisdiction to even decide the merits of the turnover order. So I'm not sure how that's applicable at all. So my question is, where can we find, unless you're saying that we don't have to look at the title of the pleading, maybe that's what you're saying. That's part of what I'm saying. Yes, we're looking at the substance of the allegation and that's in re marriage best among others. So we look at a marriage case as opposed to a business case. Yes, in this instance, because the concept is that the nature of pleading, it was a, you know, a family law matter in that particular instance. But yes, Delaware law would apply to dissolution. The summary judgments that were that are at issue here did not directly concern solution. These are limited to turnover of the unauthorized lease and bonus payments because those payments were made by the four knees in their capacities as officers and directors of a Delaware corporation. I think we all agree that Delaware law would apply to those issues, which issues I'm sorry, to the breach of fiduciary duty, to the actual merits of the propriety of these particular payments. And we've briefed this, but our position is that those payments were ultra virus because the articles of incorporation clearly delegate responsibility for bonus and profit sharing plans to the board because there was no board meeting held with at least none with formal notice as admitted by plaintiff James Forney, or I guess, more appropriately litigant James Forney. And because James Forney also testified as is included in the summary judgment motion, that he alone authorized these payments. And under Delaware law, a majority of the directors, which in this instance would require at least two, have to act for a valid, you know, action of the corporation. So these were ultra virus unauthorized payments. But aren't those questions of fact, whether things are ultra virus, acts or breaches of fiduciary duty, aren't those questions of fact, and how does that come into an accounting lawsuit? It comes into the complaint that's sort of within this case. What complaint is that? The complaint denominated motion for turnover, which in substance, alleged a claim for breach of fiduciary duty. And how is it that a third party who's appointed to marshal assets can now file a proceeding unless we do incorporate Delaware law? And that if we're going to incorporate Delaware law, we have to have a finding of insolvency. So it's confusing, right? It is confusing. The best explanation I can provide is that both Illinois and Delaware law authorized equitable receiverships, insolvency or not. And in this case, Donald of all parties. So essentially, this was an issue that was waived. It was agreed to by the parties and signed off by the court. And where, how do we know that it was agreed to by the parties when appellant claims that there was during a hearing that the procedure was improper? How do you get to that? Everybody agreed or it was waived when we have that statement in the record? Right? Well, clearly it was waived because the parties litigated this for 10 plus years. Well, are you saying that time waves it like in an arbitration agreement? Well, no, there's no agreement. There's no articles or bylaws or anything that speaks to this. But they've, this was never raised in the trial court. It cannot be raised for the first time on appeal. The idea that somehow the appointment of the receiver was usually improper was never an issue that anyone raised in the trial court. It was dispute about the scope of his authority, but never his appointment. Well, if there's a dispute on his authority, then there must be an issue raised as to his authority to file this motion for turnover. Yes, I think that that's true, that that issue was raised by James and Joseph Forney. They dispute his authority to file this motion. We believe it's clear from the court's ongoing orders that he had that authority, and that he has that authority as an equitable receiver under both states' law. So, can you point me to a case that says Illinois recognizes the equitable receiver? It's the last section of our brief. I'm sorry? The last section of our brief cites several cases. Okay. I have that then. So, briefly, to summarize, I think we've covered a lot of the pleadings issues, and I recognize that this is a procedurally unique case with some interesting multi-state litigation issues. In terms of the idea that there are issues of fact necessarily involved in determining that a matter is ultra-virus, I disagree. These were not genuinely disputed issues. James Forney admitted he didn't properly call a meeting. He admitted that he alone authorized these payments, and that cannot be valid. Similarly, he admits that he authorized these payments to himself while his wife had a competing business, and while he was basically having no third-party oversight. He's engaged in self-dealing, and he's failed to establish that his effort to set these payments in any way was a fair transaction, that it was fair in negotiation because of the timing relative to the appointment of the custodian and receiver, as set forth in our brief, or that it was fair in amount. His hearsay statements of profits do not establish profits. Those are conclusory, inadmissible allegations. Okay. Okay. Thank you. Thank you so much for your argument. Mr. Unran, rebuttal? You're muted. Well, they unmuted you, and I think you may have muted yourself. Can you hear me now? There you go. Perfect. Okay. Sorry. This is my stop sign. Okay. Just a few quick points. The receiver contends that we have no evidence supporting these bonus payments, and that's not true. What we have is sworn affidavits stating that the company earned a substantial profit based on their work, and that's never been disputed. We have sworn deposition testimony that states that the company earned 30% net profit on a $5 million to $6 million contract that they single-handedly transformed out of a $600,000 contract. More to the point, this keeps coming up that Mr. Sampson is an equitable receiver, and yet we have a judgment here finding my clients breached a fiduciary duty. Well, that's not an equitable claim. That's a legal claim. I'd like to put Mr. Sampson on the of the net profit that they awarded themselves is unreasonable, but that can't happen here. There's a reason for that. There's been no jury demand. Why? Because this is a claim for an accounting. You can't get a jury in an equitable claim for accounting. What do you say about Appley's argument that there was this waiver? We cooperated with the investigation into the corporate's assets and liabilities. We answered their claims, and we could see that, and I think that was appropriate. The problem comes in when the receiver asks for judgment. When he asks for an award of money, damages, a legal claim, when that arrives within, it was roughly 40 days later, we filed our response to that motion for summary judgment, and we said, you can't do this. You need to file a complaint. Couldn't you have, and I understand you came into this late, so you don't have the thought process, but once you knew the details of what was going on in the corporation, wouldn't the plaintiff have been able to file a breach of fiduciary duty action asking for dissolution of the corporation under that business act we've been talking about? Absolutely. He could have, plaintiff could have done that, and the receiver could have filed, appropriately filed, a complaint on behalf of the corporation. Now, granted, we do run into a bit of a problem here, because under Delaware law, under section 291, the receiver is only allowed to do that in the case where the corporation is insolvent. But Mr. Unrath, Ms. Strick says we're talking about equitable receivers in Illinois, so we're not going to mix. So either we have to all somehow agree that we're talking about Illinois law procedurally or substantive law. What say you about her argument about equitable receivership in Illinois? I don't find a single case stating under Illinois or Delaware law that a receiver is entitled to seek money damages in a complaint that has never been filed, that they can file a motion for turnover with a legal complaint and file a legal complaint in the form of a motion for turnover. There is no law that states that. The Anderson case, it occurred there, but neither party addressed the issue. No one objected to it. As a matter of fact, it wasn't even an issue in that appeal. That appeal dealt with, if anything, it seems that that argument was dicta, because that was a jurisdictional case. My question, though, is, and this will be my last one, I promise, when you ask for an accounting, are you asking a court of equity to determine what substantive law? Or is there a difference for courts of general jurisdiction? I'm not sure if there's a difference, Your Honor. Well, our time has expired. Justice Wharton, Justice Barberos, do you have anything else? No. No questions. Okay. Thank you very much. It's a fascinating case. We'll take the matter under advisement and issue an order in due course. Thank you very much. Thank you.